IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLINE M. TRENKA, | ) | CASE NO. 1:07 CV 3608 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Caroline M. Trenka, for disability insurance benefits. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Trenka had severe impairments consisting of multiple sclerosis (in remission), chondromalacia of the knees, and status post left knee arthroscopy.[1] He determined, however, that Trenka did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1 of the regulations.[2] The ALJ made the following residual functional capacity finding:

---

[1] Transcript ("Tr.") at 17.

[2] *Id.* at 18.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the exertional and non-exertional requirements of basic work-related activities except for lifting more than up to 10 pounds frequently and 15 pounds more than occasionally; carrying, pushing and pulling more than up to 10 pounds frequently and 15-20 pounds more than occasionally; standing/walking for more than a total of about 6 hours in an 8-hour workday; sitting for more than a total of about 6 hours in an 8-hour workday (exertional); work involving exposure to unprotected heights (including ladders and scaffolds), or moving machinery; or work involving squatting, kneeling, and/or crawling more than frequently (non-exertional).[3]

Given that residual functional capacity, the ALJ determined that Trenka was capable of performing her past relevant work as a receptionist/general office clerk and waitress.[4] He, therefore, found Trenka not under a disability.[5]

Trenka asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Trenka presents three issues for decision on judicial review:

- Whether the ALJ's finding at step 2 of the sequential evaluation process is supported by substantial evidence when there is no evidence in the record to support a finding that Ms. Trenka's multiple sclerosis is in remission?

- Whether the ALJ's finding at step 3 of the sequential evaluation process is supported by substantial evidence when the record supports a finding that Ms. Trenka's multiple sclerosis meets the requirements of a listed impairment?

---

[3] *Id.*

[4] *Id.* at 22.

[5] *Id.* at 23.

- Whether the ALJ's finding at step 4 of the sequential evaluation process is supported by substantial evidence when the symptoms resulting from Ms. Trenka's multiple sclerosis preclude her from performing sustained competitive employment?

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

**2.	Severe impairments**

Trenka first complains that the ALJ erred by not finding her multiple sclerosis in remission at step two of the sequential evaluation process. Under the Sixth Circuit's decision in *Maziarz v. Secretary of Health and Human Services*,[7] the failure properly characterizes a severe impairment at step two of no consequence where, as here, the ALJ moves on to complete the sequential evaluation analysis at steps three, four, or five. The issues are whether the ALJ properly evaluated the severity of Trenka's multiple sclerosis at step three and the limitations imposed by that condition at step four. I will discuss these issues below.

**3.	An impairment meeting the listing in § 11.09A of the regulations**

Trenka argues that her multiple sclerosis meets or equals the listing in § 11.09A of Appendix 1. To qualify for a listing under this section, multiple sclerosis must manifest a disorganization of motor function as described in § 11.04B. Under § 11.04B, the impairment must involve "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements...."[8]

The claimant bears the burden of proof at step three of the sequential evaluation process, which involves the determination of whether the impairment meets or equals a listing.[9] To meet a listing, the claimant must show that her impairment meets all of the specified medical criteria; an impairment manifesting only some of the criteria, no matter

---

[7] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

[8] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04B.

[9] *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-28 (6th Cir. 2004).

how severe, does not qualify.[10] A claimant can demonstrate equivalency only by medical findings equal in severity to all criteria in the listed impairment.[11]

In support of her step three argument, Trenka points to her hearing testimony about trouble in both hands with numbness,[12] to a note by her treating neurologist, Joseph Zayat, M.D., dated February 4, 2004, in which he reported the subjective complaint of occasional tingling and numbness in the fingers and dropping objects; and Dr. Zayat's note of December 28, 2005, in which he documented a complaint of numbness and paresthesia in fingers of both hands, especially in the morning.[13]

Under the listing, however, the multiple sclerosis must involve "significant and persistent disorganization of motor function" and "sustained disturbance of gross and dexterous movements."[14] Dr. Zayat's notes, however, make reference to only "occasional tingling and numbness" and "numbness and paresthesia in the fingers" in the morning.[15] Twice, in giving his residual functional capacity assessment, Dr. Zayat rated Trenka "able" to do fine and gross manipulation.[16]

---

[10] *Hicks v. Comm'r of Soc. Sec.*, 105 F. App'x 757, 761 (6th Cir. 2004), quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

[11] *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

[12] Tr. at 351.

[13] *Id.* at 305.

[14] 25 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04B.

[15] Tr. at 226, 305.

[16] *Id.* at 152 (August 18, 2003), 224 (February 4, 2004).

Although the evidence shows that the multiple sclerosis did cause Trenka to have some numbness and tingling in her fingers, nevertheless, the evidence does not support disorganization of motor function to the significant, persistent, and sustained degree required by the listing.

I must note, however, that the record here is disturbing with respect to the treatment of the step three inquiry by the ALJ at the first hearing. At that hearing, the ALJ called a medical expert, Malcolm Brahms, M.D., who offered an opinion that Trenka met the listing in § 11.09.[17] After Dr. Brahms expressed that opinion, the ALJ immediately dismissed him and concluded the hearing.[18] As counsel for Trenka observed during the oral argument in this case, she concluded that, based on Dr. Brahms's testimony, the ALJ would find her client listed.

Nevertheless, in his decision, the ALJ found that Trenka did not meet or equal a listing and dismissed Dr. Brahms's opinion as inconsistent with the objective medical evidence.[19] I find the ALJ's dismissal of Dr. Brahms's testimony troubling given that he gave him no opportunity to explain his opinion in light of the objective medical evidence.

---

[17] *Id.* at 386.

[18] *Id.*

[19] *Id.* at 271, 273. Given the abruptness of the ALJ's dismissal of Dr. Brahms, I cannot speculate as to the basis for his opinion. I note, however, that the administrative record at the time contained the two opinions of Dr. Zayat in which he rated Trenka "able" to perform fine and gross manipulation. *Id.* at 152, 224. The objective medical evidence, therefore, did present a basis for questioning Dr. Brahms's opinion in its abbreviated form.

Trenka's counsel asked for review of the ALJ's decision by the Appeals Council, citing as one of the grounds therefor the ALJ's treatment of Dr. Brahms.[20] The Appeals Council, in fact, remanded the case but surprisingly made no mention whatsoever of the handling of Dr. Brahms's testimony.[21]

The remand sent the matter back to square one. The ALJ held another hearing and called yet another medical expert, Franklin Plotkin, M.D.[22] The ALJ did not ask Dr. Plotkin about any listing. Instead, he inquired about residual functional capacity and received an opinion basically consistent with the residual functional capacity finding adopted in his decision.[23] Counsel for Trenka cross-examined Dr. Plotkin, but she asked no questions about a listing.[24]

Although I am dissatisfied with the way in which the ALJ handled Dr. Brahms at the first hearing, the remand erased any error that may have arisen therefrom. At the second hearing, Trenka had the opportunity to question the medical expert about a listing but did not do so. She had the burden of proof at step three. As discussed above, substantial evidence in the record supports the ALJ's finding that Trenka's multiple sclerosis was not of sufficient severity to meet or equal the listing in § 11.09A. Accordingly, that finding must be affirmed.

---

[20] *Id.* at 281-82.

[21] *Id.* at 276-78.

[22] *Id.* at 352-61.

[23] *Id.* at 359-60.

[24] *Id.* at 360-61.

### 4. Residual functional capacity and the ability to perform past relevant work

Trenka challenges the ALJ's finding that she could perform her past relevant work and his assessment of the credibility of her fatigue allegations.

Trenka testified at the hearing before the ALJ that she had fatigue as a consequence of her multiple sclerosis.[25] In her written reports to the agency, she also referenced experiencing fatigue.[26] Dr. Zayat's treatment notes contain notations of subjective complaints of fatigue.[27] Dr. Zayat offered no opinion as to work-related limitations caused by her multiple sclerosis, however.

The medical expert who testified at the hearing, Dr. Franklin Plotkin, noted that exhaustion is a subjective symptom of multiple sclerosis and that her reports of exhaustion were not unreasonable.[28] Nevertheless, he opined that her impairments limited her to modified light work and that she could sustain an eight-hour workday.[29]

The ALJ essentially adopted the residual functional capacity opinion of Dr. Plotkin as his finding[30] and incorporated it into his hypothetical to the vocational expert.[31] The

---

[25] *Id.* at 350, 351.

[26] *Id.* at 109, 130, 141.

[27] *Id.* at 199, 203, 226, 305.

[28] *Id.* at 360-61.

[29] *Id.*

[30] *Id.* at 18.

[31] *Id.* at 365.

vocational expert responded that Trenka could perform her past relevant work as a receptionist/general office clerk, which she had performed at the sedentary level.[32] He further testified that she could probably also do her past relevant work as a dental assistant, waitress, and bartender.[33]

Based on the testimony of the medical and vocational experts, the ALJ found Trenka capable of performing her past relevant work as a receptionist/general office worker and waitress.[34] He found Trenka not entirely credible as to her statements concerning the intensity, persistence, and limiting effects of her symptoms.[35] In support of this finding, the ALJ discussed Trenka's testimony, reviewed the medical evidence, and the various statements on the record regarding her activities.[36] He noted that at least one job among her past relevant work – the receptionist/general office position – was sedentary work, providing additional accommodation for her claimed symptoms.[37]

---

[32] *Id.* at 365, 366.

[33] *Id.* at 366.

[34] *Id.* at 22.

[35] *Id.* at 20.

[36] *Id.* at 20-21.

[37] *Id.* at 22.

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[38]

The Social Security Administration has recognized by policy interpretation ruling and regulation that, even in the absence of such objective medical evidence, a claimant may experience pain (or other symptoms, such as fatigue) severe enough to impose limitations on the capacity for work.[39] In such cases, the ALJ must evaluate the credibility of the claimant's allegations of those symptoms and limitations induced thereby.[40]

The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints.[41] A court may not disturb the ALJ's credibility determination absent compelling reason.[42]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve

---

[38] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 988-89 (N.D. Ohio 2003).

[39] *Id.* at 989, quoting SSR 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34484 (July 2, 1996), and 20 C.F.R. § 416.929(c)(2).

[40] *Id.*

[41] *Buxton*, 246 F.3d at 773.

[42] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

pain.[43] If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[44] An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[45] The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.[46] The articulation should not be conclusory;[47] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[48]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[49] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

---

[43] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[44] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[45] 20 C.F.R. § 404.1529(c)(3).

[46] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[47] SSR 96-7p, 61 Fed. Reg. at 34384.

[48] *Blom*, 363 F. Supp. 2d at 1054.

[49] 20 C.F.R. § 404.1529(c)(3).

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence. The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad.

Here, the ALJ did provide adequate articulation in support of his credibility finding. The objective medical evidence supplied through Dr. Zayat confirmed the diagnosis of multiple sclerosis and identified fatigue as a symptom (by Trenka's subjective complaints). He did not, however, give any opinion regarding the extent to which Trenka's fatigue limited her ability to work. Dr. Plotkin supplied that opinion. After reviewing the medical records and hearing Trenka's testimony, which he acknowledged as reasonable, he opined that she could perform sustained work at a reduced level. The ALJ incorporated the limitations identified by Dr. Plotkin into a hypothetical to the vocational expert, who opined that she could at the very least do past work at a sedentary level.

In adopting these opinions into his ultimate finding, the ALJ considered Trenka's allegations about fatigue, evaluated them against the objective medical evidence and the evidence of her activities, and concluded that she could at the very least do her past sedentary work. In doing so, the ALJ did not reject Trenka's allegations; he gave them weight although he discounted them.

On this record, I cannot say that substantial evidence fails to support the ALJ's finding – that is, I must conclude that a reasonable mind might accept the evidence relied on by the ALJ as adequate to support his finding.[50] I do not find, therefore, a compelling reason to disturb his credibility finding.[51]

## Conclusion

Substantial evidence supports the finding of the Commissioner that Trenka had no disability. Accordingly, the decision of the Commissioner denying Trenka disability insurance benefits is affirmed.

IT IS SO ORDERED.

Dated:   November 20, 2008                                s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[50] *Buxton*, 246 F.3d at 772.

[51] *Smith*, 307 F.3d at 379.